### BALDWIN REED *vs.* TOWN OF SHARON.

A town voted, on the 8th day of August, 1863, "that the selectmen be authorized to pay $300 to every citizen of the town drafted into the service of the United States during the present war, and accepted by the board of examiners, who shall enter said service or procure a substitute." The plaintiff was notified on the 1st day of August that he had been drafted, and was required to appear for examination on the 11th of August. Held that he could not be regarded as already "drafted into the service" at the time the vote was passed, and that the bounty provided by the vote was not as to him a gratuity.

Held also that the vote purported a promise, and that the payment of the bounty was not discretionary with the selectmen.

Also that the vote of the town, so far as it was invalid when passed, was made valid and binding on the town by the act of July 6th, 1864.

Held also that the "board of examiners" mentioned in the vote must be taken to mean the "board of enrollment," and that the plaintiff could not recover without averring and proving that he was accepted by that board.

ASSUMPSIT, to recover a bounty voted by the defendants to

citizens of the town drafted into the military service of the United States. The following facts were found by the Superior Court:

The plaintiff was a native and resident of the town of Sharon. On or about the first day of August, 1863, he was duly notified by the proper authority that he had been drafted into the military service of the United States, and required to appear at the city of Bridgeport for examination on the 11th of the same month. On the 12th day of August, 1863, he procured a substitute by the name of John Williams, who was examined and accepted in his stead, to whom he paid $300. In consequence of having furnished such substitute he was exempted from military duty for three years thereafter.

On the 8th day of August, 1863, at a meeting of the town of Sharon, duly warned, the following vote was passed:

" *Resolved,* That the selectmen be authorized to pay the sum of $300 to every citizen of the town of Sharon drafted into the service of the United States during the present war, and accepted by the board of examiners, who shall enter said service or procure an accepted substitute."

In pursuance of an act passed November 13th, 1863, authorizing towns to ratify votes previously passed without lawful authority, giving bounty to soldiers, a meeting of the town of Sharon was held in January, 1864, at which meeting it was voted not to confirm the vote of August 8th, 1863.

On these facts the case was reserved for the advice of this court.

*Sedgwick* and *O. S. Seymour,* for the plaintiff, contended that the drafting of the plaintiff was incomplete when the vote was passed, so that he could not be regarded as drafted before the vote; that the vote was to be considered as a promise of the town to pay the $300, and that therefore assumpsit would lie; that it was averred and found that the substitute was accepted and entered the service, and that the town therefore had the benefit of him on its quota; and that the vote of the town, so far as it was invalid when passed, was made valid and binding on the town by the act of July 6th, 1864.

*G. C. Woodruff* and *G. M. Woodruff*, for the defendants, contended that the plaintiff was drafted before the vote was passed, so that the vote as to him was a mere gratuity; *Usher* v. *Colchester*, 33 Conn., 567; that the vote did not purport a promise to pay the $300, but was a mere authority to the selectmen to pay it, and that the payment was discretionary with them; that even if the selectmen were bound to pay it assumpsit would not lie, but the remedy was by mandamus; and that it was not averred nor found that the plaintiff was accepted by the board of examiners, and that there could be no recovery under the vote without an allegation and proof of this fact.

BUTLER, J.    We are of opinion that the first objection interposed by the defendants in this case can not be sustained.    The plaintiff was not in strictness "drafted" at the time the vote was passed.    He had been enrolled, his name drawn by the board of enrollment, and he had been notified to appear at the rendezvous on a day subsequent to the passage of the vote.    These were steps or stages in the proceeding, but other material things were required to be done before the proceeding as to him was complete, and he could be said in the language of the vote "to be drafted into the service."    It was further required that on appearing at the rendezvous he should be examined by the surgeon, upon whose report the board of enrollment were to act, and accept or reject him.    The examination and report of the surgeon, and the action thereon and acceptance by the board of enrollment, were material steps to the completion of the draft in every case; for it was the purpose of the government in providing for such examination and acceptance to receive and hold able bodied men only, as well as furnish an opportunity to those who were drawn out to establish their claims to exemption.    Until he was examined and accepted he could not in strictness be said to be drafted, and therefore was not then "drafted into the service" within the fair intendment of the vote.    We can not doubt that the vote was passed for the benefit of the plaintiff and

others who had then been drawn and notified, and such of them as on examination should be held to service.

Nor is the second objection sustainable. As the draft in his case was not completed until after the passage of the vote, it was not as to him a mere gratuity if he acted on the faith of it, and the principles adopted in *Usher* v. *Colchester*, 33 Conn. R., 567, are not applicable to the case. And we think that the payment was not discretionary with the selectmen, and that the plaintiff would be entitled to recover by force of the act of July 6th, 1864, and upon the principles adopted in *Bartholomew* v. *Harwinton*, 33 Conn. R., 408, if there were nothing more in the case.

But we are satisfied that the third objection of the defendants must prevail. The provision in the vote that the drafted person should be "accepted by the board of examiners," had reference, undoubtedly, to the question whether the conscript was liable to military duty or exempt, and a determination of that question by the board of enrollment. The town did not contemplate or intend the payment of money to those who were not liable to the draft and were discharged by the board of enrollment because they were found "unfit for service," or to have a valid claim to exemption; but to those only who should be found subject to duty and accepted and held to service. The plaintiff therefore has not brought himself by the facts averred and found within the provisions of the vote. He should aver and prove that he was examined by the board of enrollment and accepted. We can not hold the town liable by force of the absolute statute of 1864, unless a compliance with every material condition of the vote is averred and proved.

It is urged by plaintiff's counsel that such is not a fair construction of the vote, because they say a conscript had no right to put in a substitute after he was examined and accepted. Such may have been the practice of the board of enrollment, but we do not so understand the law. The conscript was authorized to furnish an acceptable substitute, or pay $300, "*on or before the day fixed for his appearance;*" and by another section he was entitled to a certificate of exemption

if he furnished an acceptable substitute after he was "enrolled and drafted according to the provisions of the act." He was entitled to an examination on the day fixed for him to appear, and we see nothing in these or any of the provisions of the act to prevent him from furnishing an acceptable substitute after examination, if upon the day of appearance, for there is no other limitation as to time, and no authoritative construction of the law to the contrary has been brought to our notice. But if the law was as claimed, the fact could not affect the construction of the vote, although it might prevent the plaintiff, and others similarly situated, from taking the benefit of it. The intent of the vote, notwithstanding the misnomer of the board, is clear, and the town had a perfect right to insert such a condition in it; and if done under misapprehension of the law or practice we can not reform it by expurgation, and it must stand and be operative in this action as made, if at all.

The Superior Court must therefore be advised that if the plaintiff shall aver, and on further hearing prove, that he was examined by the board of enrollment, found subject to military duty and accepted, he can recover; but if not, then judgment should be rendered for the defendants.

In this opinion the other judges concurred.